UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEWYORK

_____

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

               Plaintiff,                          01-CV-6329P

          v.

EVERDRY MARKETING AND
MANAGEMENT, INC.,
EVERDRY MANAGEMENT SERVICES,
INC. a/k/a EVERDRY WATERPROOFING
and EVERDRY OF ROCHESTER,

               Defendants.
_____

## PRELIMINARY STATEMENT

Pending before this Court are three motions for post-trial relief. (Docket ## 196, 198, 203). This decision addresses defendants' motion to amend or correct the judgment on the grounds that the damages awarded to four claimants exceed the statutory maximum under 42 U.S.C. § 1981a(b)(3). (Docket # 196). The EEOC opposes the motion. (Docket # 208).

Rule 59 of the Federal Rules of Civil Procedure permits a party to move to alter or amend a judgment entered pursuant to a finding by a jury. *See* Fed. R. Civ. P. 59(e). The decision whether to grant such a motion rests in the sound discretion of the district court. *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983). Relief is available under Rule 59 only if the movant can demonstrate "manifest errors of law or fact or newly discovered evidence that was not previously available." *Sugrue v. Derwinski*, 1993 WL 742742, *1 (E.D.N.Y. 1993)

(citing *Wallace v. Brown*, 485 F. Supp. 77, 78 (S.D.N.Y. 1979)).

Similarly, Rule 60 permits the court to relieve a party from a final judgment in the event of, among other things, mistake, inadvertence, excusable neglect, newly discovered evidence or fraud.  Fed. R. Civ. P. 60(b); *see House v. Sec'y of Health and Human Servs.* 688 F.2d 7, 9 (2d Cir. 982).  According to the Second Circuit, however, relief under Rule 60(b) is "extraordinary" and may be granted "only upon a showing of exceptional circumstances." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citations omitted).  As with Rule 59, motions seeking relief under Rule 60 are "addressed to the sound discretion of the district court." *Id.*

## DISCUSSION

Following a three-week trial in this matter, the jury rendered a verdict against defendants, finding that they had subjected the thirteen claimants on behalf of whom the action was brought to a hostile work environment based on gender. (Docket # 189).  The jury awarded compensatory and punitive damages in excess of $50,000 to four of the claimants: Stephanie DiStasio ($51,500), Lorraine Backus ($70,000), Anna Stevenson ($79,500) and Jennifer Zazzaro ($51,500). (Docket # 189).  Defendants assert that the maximum amount recoverable by each individual claimant is $50,000, and they thus move to reduce to that amount the judgment for each of the four identified claimants[1] – a reduction that would reduce the overall judgment by a total of $52,500. (Docket # 196).  The EEOC opposes the motion and argues that the applicable statutory maximum for each of the four claimants is $100,000. (Docket # 208).

---

[1] They jury also awarded claimant DiStasio $1,000 in lost wages.  That award is not at issue in this motion and would not be subject to any reduction.

42 U.S.C. § 1981a limits the amount of damages that may be recovered in a Title VII case based upon the number of people employed by the defendant. Specifically, the statute provides:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed, for each complaining party –
>
> (A)   in the case of a respondent who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $50,000;
>
> (B)   in the case of a respondent who has more than 100 and fewer than 201 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $100,000; and
>
> (C)   in the case of a respondent who has more than 200 and fewer than 501 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $200,000; and
>
> (D)   in the case of a respondent who has more than 500 employees in each of 20 or more calendar weeks in the current or preceding calendar year, $300,000.

42 U.S.C. § 1981a(b)(3).

The EEOC maintains that the judgment does not exceed the statutory cap because defendants in fact employed over 100 employees during 20 or more weeks in the calendar year 1999.[2] That assertion is based entirely upon two employee lists produced by defendants during

---

[2] The parties agree that 1999 is the appropriate year to examine. According to the statute, the relevant time period is the calendar year in which the complaining party worked or the year preceding that one. *See* 42 U.S.C. § 1981a(b)(3). In this case, two claimants (DiStasio and Backus) worked during 1998 and 1999; the third (Zazzaro) worked in 1999; and the fourth (Stevenson) worked during 2000 and 2001. Thus, the calendar year 1999 is the appropriate time period to

discovery – the first entitled "1999 Employee Master List Everdry Management Services," and the second entitled "1999 Employee Master List Everdry Marketing and Management" (together, "the Employee Lists").  From these lists, the EEOC has compiled a chart listing the total number of employees of both defendant Everdry Management Services ("EMS") and defendant Everdry Marketing and Management, Inc. ("EMM") during each of 47[3] consecutive weeks in 1999.  The chart prepared by EEOC reveals the number to range from a low of 143 (January 4-10) to a high of 197 (November 1-7).

Defendants strenuously object to the Court's reliance on the Employee Lists as an accurate measure of the number of employees of either EMS or EMM.  Rather, they ask the Court to rely upon the post-trial hearing testimony of Carl Moore, who was employed as an Operations Manager at EMM.  According to Moore's testimony, during 1999 EMS had between 50 and 65 employees and EMM had approximately 12.  Defendants further maintain that the number of employees at EMM should not be counted toward the statutory cap notwithstanding the jury's finding that EMS and EMM were integrated enterprises.

Of course, I need not reach defendants' challenges unless the Employee Lists, upon which the EEOC relies, identify more than 100 employees during at least 20 of the 52 weeks of 1999.  Based upon my careful review of those lists, I have serious doubts that they do.

First, I note that the chart prepared by the EEOC is grossly inaccurate and must be rejected as unreliable.  The first column of that chart purports to list 143 employees of EMS and EMM who worked during the week January 4 through January 10, 1999.  Again, that chart was prepared based upon the Employee Lists provided by defendants during discovery.  Of the 143 employees listed on the EEOC's chart, however, I find only 87 who worked during that week

---

examine for all four claimants in order to determine whether their awards of damages exceed the statutory cap.

[3] No explanation has been offered as to why the chart does not include computations for the weeks following November 22-28, 1999.

according to the Employee Lists (53 at EMS and 34 at EMM). (Attached as Exhibits A and B are the lists of EMS employees and EMM employees, respectively, who the Court has identified were employed by defendants during that week). To illustrate the various errors, of the first 20 employees listed in the first column of the EEOC's chart, seven began employment in the year 2000 (Alexander, Ange, Brack, Burtner, Burton, Bush and Cacioppo), two began later in the year 1999 (Beach and Bryant), three are names that do not appear on either of the Employee Lists (Bardne, Bayne, Becker) and one may or may not have worked during the January 4-10, 1999 week (Brimacomb was hired on August 28, 1998 and rehired on April 18, 2000; the EMS Employee List does not reflect whether his first tenure of employment ended before or after January 10, 1999). Discounting these individuals, the first 20 names include only six whose employment during the January 4-10, 1999 week can be verified by the EMS and EMM Employee Lists.

These errors are not limited to the first week; they permeate the chart. For example, taking the week beginning November 1, 1999 – which reflects the greatest number of employees on the EEOC's chart – that number is also substantially overstated. The EEOC's chart lists 197 employees; the Court's calculations reveal a total of 94 (56 at EMS and 38 at EMM).

Finding the EEOC's chart unreliable, I turn to a review of the Employee Lists themselves. A spot check of four weeks during different seasons of 1999 reveals fewer than 100 employees in each of those weeks. Specifically, the Court's review has identified the following:

| January 4-10 | "Week 1" | 53 EMS | 34 EMM | 87 TOTAL |

| June 21-27 | "Week 25" | 55 EMS | 32 EMM | 87 TOTAL |
| September 6-12 | "Week 36" | 48 EMS | 35 EMM | 83 TOTAL |
| November 1-7 | "Week 44" | 56 EMS | 38 EMM | 94 TOTAL |

Based upon this review, it appears unlikely that the EEOC will be able to demonstrate that defendants employed more than 100 employees in at least 20 weeks of the year 1999, even if the Court were to accept the Employee Lists as reliable records of the number of employees who worked for defendants during 1999. These doubts are premised upon the facts that for each of the four weeks examined, the total was less than 100, and that the total was less than 100 even for the week that the EEOC identified as having the greatest number of employees (Week 44).

Having examined only four of the 52 weeks in 1999, this Court will permit the EEOC to review the Employee Lists one final time to determine whether it persists in its belief that the lists do reveal 20 weeks in which more than 100 employees worked. If so, the EEOC may file a post-hearing submission identifying for each week in 1999 in which it contends that more than 100 employees worked, the names of the employees, the page and line where each employee is identified on the Employee Lists and the employment dates for all employees identified. Such a submission, if any, shall be filed by **March 4, 2008**. If no such submission is filed by that deadline, this Court will grant defendants' motion and reduce to $50,000 the

compensatory and punitive damages awards for claimants DiStasio, Backus, Zazzaro and Stevenson.

**IT IS SO ORDERED.**

Dated: Rochester, New York February 19, 2008

s/Marian W. Payson
MARIAN W. PAYSON
United States Magistrate Judge

compensatory and punitive damages awards for claimants DiStasio, Backus, Zazzaro and Stevenson.

**IT IS SO ORDERED.**

Dated: Rochester, New York February 19, 2008

        s/Marian W. Payson
MARIAN W. PAYSON
United States Magistrate Judge

# **EXHIBIT A**

WEEK 1: JANUARY 4 - 10, 1999

EMPLOYEES ON EMS EMPLOYEE LIST[4]

1. Stacy Boehm
2. David Bowers
3. Anna Pampaukidis
4. John Sharpe
5. Pren Vulaj
6. David Barone
7. Sherri Clark
8. Joe Timmons
9. Gene Ake
10. Kevin Casey
11. Ronald Deffenbaush
12. Charles Gray
13. Chester Marianetti
14. Steed Reynolds
15. Scott Smith
16. Jeffrey Williams
17. Lorraine Backus
18. Lill Cocilova
19. Mark Dade
20. Beverly DiPaola
21. Danielle Doty
22. Karianne Hoak
23. Lisa Laucht
24. Julie Calzaretta
25. Stephanie DiStasio

---

[4]   Employees who were hired before January 4, 1999 and were rehired after January 10, 1999 were not included on this list unless it was clear from the Employee List that his or her first tenure extended into the week of January 4th. For example, Kathleen Longdue (EMS Employee List, p. 1) was not included. As to her, the List indicates that she was hired on August 19, 1996, rehired on January 3, 2000 and terminated on May 12, 2000. The List simply does not indicate whether she was or was not working on January 4, 1999. By contrast, Anthony Adams (EMS Employee List, p. 12) was included. As to him, the List indicates that he was hired on November 30, 1998, terminated on February 11, 2000 and subsequently rehired on October 16, 2000. Presumably, when the List was generated, he was still employed by EMS.

Exceptions to this methodology were made for Anna Pampaukidis, Stephanie DiStasio and Danielle Doty, who testified at trial that they were employed during the above-referenced week.

Finally, for those few employees as to whom the dates listed were illegible (Amy Jaus and Jim Javcevski), they were presumed to be EMS employees during the January 4-10, 1999 week and were counted.

26. Jennifer Goodrell
27. Amy Jaus (cannot read her hire date)
28. Jim Javcevski (cannot read his hire date)
29. Jeremy Lang
30. Joelle Loiacano
31. Alana Marrapese
32. Nina Stanoevski
33. Scott VanBortel
34. Edward Catlin
35. Douglas Chamberlain
36. Douglas Donovan
37. Richard Foster, Jr.
38. Richard Jacobs
39. Leslie Liese, Jr.
40. Todd Lotempio
41. Anthony McQueen, Jr.
42. Clarence Reed
43. Michael Sero
44. Kenneth Sneed
45. Bernard Steele
46. Terrance Sweet, II
47. Paul Thomas
48. Anthony Thomas
49. Jeremy Thompson
50. Ralph Whitman
51. Brian Johnson
52. James Lombardo
53. Cheryl Schojan

## EXHIBIT B

WEEK 1: JANUARY 4 - 10, 1999

EMPLOYEES ON EMM EMPLOYEE LIST[5]

1. Judith Garvin
2. Mary Henry
3. Randall Hushour
4. Loretta Mrak
5. Nancy Sheaves
6. John Wesolowski
7. John Gooding
8. Dennis Iacco
9. Sandra Speare
10. Lisa Mozina
11. Caryn Thompson
12. Frank Bauck
13. Richard Capp
14. Raymond Ficere
15. Jack Jones
16. William Meyer, III
17. James Varholick
18. Gary Zenobi
19. Theresa Neitzel
20. Paul Trecarichi
21. Cindy Kozlik
22. Maxine Kozlik
23. Michelle Trick
24. Michael Dalton
25. Roy Hickman
26. Kenneth Barnette
27. Jason Glover
28. Sam Mazzo
29. Carl Moore
30. Michele Babb
31. Timothy Babb
32. Wilma Dover
33. David Garvin
34. Charles Spencer

---

[5] The same methodology was used to compile the names reflected on this list as was used to compile Exhibit A, the EMS list.