## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK
## ROCHESTER DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | CASE NO. 01-CV-6329 |
| Plaintiff, | ) ) | JUDGE CHARLES J. SIRAGUSA |
| vs. | ) ) | MAGISTRATE JUDGE MARIAN W. PAYSON |
| EVERDRY MARKETING AND MANAGEMENT, INC., | ) ) ) | |
| and | ) ) | |
| EVERDRY MANAGEMENT SERVICES, INC., d/b/a EVERDRY WATERPROOFING, | ) ) ) | |
| and | ) ) | |
| EVERDRY OF ROCHESTER, | ) ) | |
| Defendants. | ) | |

## DEFENDANT EVERDRY MARKETING AND MANAGEMENT, INC.'S BRIEF IN OPPOSITION TO EEOC'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Now comes Defendant, Everdry Marketing and Management, Inc., by and through undersigned counsel, and respectfully submits its brief opposing the EEOC's Motion to Compel Production of Documents.

## INTRODUCTION

The EEOC has rabidly sought post-judgment discovery from Everdry Management Services, Inc. (hereinafter "EMS") since the jury verdict herein. Since that time, despite its repeated requests and cries to this Court, EEOC has received consistent answers from counsel for EMS – namely, that EMS ceased to exist in August, 2004. For example, the verified responses to the EEOC's post-judgment Interrogatories to EMS yielded responses informing the EEOC that EMS:

(1) ceased to exist as an operating corporation on August 1, 2004; (2) has no current offices, Board of Directors, or bonded debt as it is not conducting business; (3) has not paid municipal, state, or federal taxes since 2004 because it is not conducting business; and (4) has no balance in any bank or trust accounts. EMS Responses to EEOC Interrog. Nos. 4-12 (*See* Exhibit A).

Verified supplemental responses by EMS revealed that, because EMS ceased to exist in August 2004, it: (1) has no commercial paper; (2) has no accounts or loans receivable in excess of $1,000; (3) has no expenses, gross profit or loss, net profit after taxes, approximate total payable or receivables subsequent to 2004; (4) paid no corporate salaries after August 2004; (6) had no corporate commercial activity after August 2004; (7) owns no real estate; and (8) has no life insurance in force on anyone. EMS Supp. Responses to EEOC Interrog. Nos. 13-20, 25, 28 (*See* Exhibit B). Perhaps most notably for the purposes of the EEOC's present Motion, former EMS representatives have also clearly stated: "There are no persons or other business entities holding funds in escrow or in trust for EMS or any subsidiaries or affiliates of EMS." *Id.* at Interrog. No. 31.

Subsequently, upon EEOC's subpoena and further order of this Court, the law firm of Boylan, Brown, Code, Vigdor & Wilson, L.L.P. (hereinafter "Boylan Brown"), counsel for EMS, produced: (1) checks received in payment of its bills for legal services to EMS from April 1, 2005 to August 28, 2009, and (2) the affidavit of Boylan Brown's director of business development attesting to the checks. *See* Ex. 1 to EEOC's Mot. to Compel. As revealed by the checks and the affidavit, legal fees incurred by EMS were paid personally by Nicholas DiCello, the principal stockholder of the now-defunct EMS. *Id*; *See* EMS Response to EEOC Interrog. No. 4. Only when Boylan Brown began rendering legal services to Everdry Marketing and Management, Inc. (hereinafter "EMM") "in litigation unrelated to the EEOC litigation" did EMM inadvertently pay EMS legal fees. As explained, Boylan Brown, although separately stating and detailing services rendered to

each corporation, sent the invoices with one combined letter addressed only to EMM, resulting in inadvertent and unintended payments by EMM for services actually rendered to EMS. *Id.*

Dissatisfied with the verified responses provided by the representative of the defunct EMS, the EEOC then turned its sights on EMM. In post-judgment document requests served to EMM, the EEOC sought duplicative and cumulative information not only available from, but already provided by, EMS: (1) all documents "relating to payments made to [Boylan Brown] for legal services provided to [EMM] and/or [EMS]" including but not limited to, invoices, bills, checks, and related correspondence; (2) all documents "relating to payments made to any entity or person for services or things provided to EMS"; and (3) all documents which "in any way concern or relate to EMM's relationship to or business with EMS." *See* Ex. 2 to EEOC's Mot. to Compel.

The undersigned responded on EMM's behalf, interposing objections to the grossly overbroad, unduly burdensome, and irrelevant requests, including, but not limited to, objections based upon the EEOC's unfounded foray into attorney-client protected matters. Displeased that EMM did not simply throw open its corporate records to allow an unfettered fishing expedition through documents already identified in verified responses as including attorney-client communications stemming from wholly unrelated litigation, the EEOC has again dragged the parties back before this Court to pursue information that (1) has already been produced, (2) in some instances simply does not exist, or (3) would have been more relevant to the EEOC's underlying claims than it could ever be to its post-judgment collection efforts. EMM therefore opposes the EEOC's Motion.

## LAW AND ARGUMENT

The EEOC's Motion to Compel discovery should be denied. Indeed, Fed. R. Civ. P. 69(a)(2) permits a judgment creditor to obtain discovery from any person "as provided in these rules or by the procedure of the state where the court is located." Regardless of however broad the

discovery permitted may be, it must still be relevant to the purpose of the rule – namely, securing the execution of judgments. Moreover, as previously briefed by the parties and noted by this Court, it must comply with Fed. R. Civ. P. 26(b)(2)(C), which states, in pertinent part:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:
> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action…

(emphasis added). Here, the EEOC seeks unreasonably cumulative and duplicative post-judgment discovery from multiple sources of irrelevant information, much of which was or should have been discovered during the underlying action, not post-judgment discovery.

I.   **The EEOC's Document Requests to EMM Are Grossly Overbroad, Unduly Burdensome, and Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

The subject document requests seek information far beyond the permissible scope outlined by Fed. R. Civ. P. 69(a)(2). Contrary to the EEOC's suggestion that its three requests are limited in scope, or that it does not seek information protected by the attorney-client privilege, the EEOC seeks broad production of wholly irrelevant material that very clearly falls within the attorney-client privilege protection.

First, EMM is represented in this matter by the undersigned and his firm, not Boylan Brown – something of which the EEOC has been acutely aware for at least ten (10) years. Verified discovery responses from EMS attest that Boylan Brown has only ever represented EMM in litigation wholly unrelated to the present matter. The EEOC has not shown, and cannot show, any reason why it should be entitled to discover information about the attorney-client relationship between EMM and Boylan Brown arising from litigation on one or more matters unrelated to this case. A request for "all documents" related to such a relationship is grossly overbroad, unduly

burdensome, not calculated to lead to the discovery of admissible evidence, and intrusive upon the attorney-client privilege.

Second, the absurdity inherent in the suggestion that a request for "all documents" evidencing correspondence "related" to payments for "legal services provided to EMM and/or EMS" is not overbroad, not calculated to lead to the discovery of admissible evidence, or intrusive upon the attorney-client relationship is self-evident.

Third, the EEOC has already been provided all available documents regarding payments to Boylan Brown for legal services to EMS by another, more convenient source – representatives of the now-defunct EMS. EMM should not have to incur the time and expense associated with responding to, and now opposing, the EEOC's unreasonably cumulative and duplicative discovery simply because the EEOC "questions" the veracity of good faith, sworn answers to its post-judgment discovery.

Fourth, the requests seeking "all documents" relating to payments for "services to things provided to EMS" or that "in any way concern or relate to EMM's relationship to or business with EMS" are patently absurd. The EEOC, and this Court, are acutely aware that EMM and EMS, although separate corporate entities, had an arms'-length business relationship from EMS' inception in 1994 through 2004 when it ceased operating. Despite this, the EEOC now seeks discovery of effectively all documents ever created evidencing the entities' relationship in any way without any limitation upon time or substance. Given the limited scope of post-judgment discovery, such requests are unquestionably overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. As such, the EEOC's Motion to Compel should be denied.

## II.    EEOC Cannot Enforce the EMS Punitive Damages Award Against EMM.

The EEOC's post-judgment discovery requests are further inappropriate as they seek information for an improper purpose. The EEOC is transparent about its attempts to seek

information by which to hold EMM liable for the punitive damages specifically awarded by the jury against EMS. Yet, this is contrary to not only the recognized purpose of punitive damages, but to the jury award itself.

Indeed, "Unlike compensatory damages, punitive damages are assessed to punish the wrongdoer rather than restore the victim." *Williams v. City of New York*, 508 F.2d 356, 360. Because of this, punitive damages may be assessed against only the offender:

> Exemplary or punitive damages, being awarded, not by way of compensation to the sufferer, but by way of punishment of the offender, and as warning to others, can only be awarded against one who has participated in the offense. A principal, therefore, though of course liable to make compensation for injuries done by his agent, within the scope of his employment, cannot be held liable for exemplary or punitive damages, merely by reason of wanton, oppressive or malicious intent on the part of the agent.

*Id.* at 361. For this very reason, one of the statutes by which the claimants brought the underlying action against EMS, 42 U.S.C. §1981a(B)(1), provides:

> A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) <u>if the complaining party demonstrates that respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to federally protected rights</u> of an aggrieved individual.

(emphasis added).

Here, EMS was the only entity that employed the claimants, and the jury was given no testimony as to the separate culpability of EMM. The record is devoid of any evidence connecting EMM to any intentional conduct probative of punitive damages. Whether EMM and EMS were an integrated enterprise for purposes of liability for compensatory damages is not dispositive of EMM's liability for punitive damages, that are aimed at deterrence and punishment for intentionally harmful conduct by a party. *Exxon Shipping Co. v. Baker*, 128 S.Ct. 2605, 2633 n. 27 (2008). This Court recognized this in its May 30, 2008 Decision & Order regarding the parties' several post-judgment motions, when it declined to grant injunctive relief against EMM for several reasons, including, but

not limited to the lack of evidence that harassment occurred at EMM's office in Ohio and that none of the claimants were employed by EMM.

Moreover, the cases the EEOC cites in support of its post-judgment fishing expedition are inapposite. In *Carte Blanche v. Diners Club Int'l*, 2 F.3d 24 (2d Cir. 1993), the court considered only the permissibility of piercing the corporate veil between a parent and wholly-owned subsidiary. The *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir. 1991), is even more distinguishable, dealing exclusively with the right of a judgment creditor to pursue an independent action for piercing the corporate veil. Here, the record is replete with evidence that EMM and EMS were never parent-subsidiary, but rather separate and distinct corporations. Moreover, the EEOC has never brought an action for piercing the corporate veil. As such, the EEOC's Motion to Compel should be denied.

Respectfully Submitted,

/s/ *Kenneth B. Baker*

_____
KENNETH B. BAKER (0015151)
HAROLD M. SCHWARZ, III (0078072)
Admitted *pro hac vice*
JAVITCH, BLOCK & RATHBONE, L.L.P.
1100 Superior Avenue, 19th Floor
Cleveland, Ohio 44114
Phone (216) 623-0000 x5090
Fax (216) 525-4941
Email hschwarz@jbandr.com
Attorney for Defendant, EverDry Marketing & Management, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 22nd day of March, 2010, a true and accurate copy of the foregoing, and all exhibits referenced therein, was filed and served electronically, and via ordinary U.S. mail, postage prepaid, upon:

Robert D. Rose, Esq.
EEOC New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10014-2112
Attorney for Plaintiff

Sanford Shapiro, Esq.
Boylan, Brown, Code, Vigdor & Wilson, L.L.P.
2400 Chase Square
Rochester, New York 14604
Attorney for Defendant
EverDry Management Services, Inc.

/s/ *Kenneth B. Baker*
_____
KENNETH B. BAKER (0015151)
JAVITCH, BLOCK & RATHBONE, L.L.P.
Attorneys for Defendant, EverDry Marketing
& Management, Inc.